IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES ANTHONY WALLACE,<br><br>                              Petitioner,<br><br>vs.<br><br>M.C. KRAMER Warden (A), Sierra Conservation Center,<br><br>                              Respondent. | Case No. 2:08-cv-00779 (JKS)<br><br><br>MEMORANDUM DISPOSITION |

Petitioner, Charles Anthony Wallace, a state petitioner proceeding *pro se*, has filed a

Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.  Wallace is currently in custody of

the California Department of Corrections, incarcerated at the Folsom State Prison in Represa,

California.  Respondent has answered.[1]  Wallace has filed a traverse.[2]

## I.      FACTUAL BACKGROUND

The following factual background is taken from the reasoned decision of the California

Court of Appeal in this case:

---

[1] Docket No. 12.

[2] Docket No. 16.

[Wallace] and the victim, Tierra Miller, had what Miller described as an "off and on" relationship for five years. [Wallace] and Miller lived together for part of that period.

On January 13, 2004, [Wallace] and Miller were living apart; [Wallace] with his mother and Miller with a girlfriend. They had not been intimate for a couple of weeks, but Miller had spent the previous night with [Wallace] at his mother's house. She considered her relationship with [Wallace] to be "[j]ust like a friend."

[Wallace] telephoned Miller on the afternoon of January 13th to plan another get-together. [Wallace] caught up with Miller that night in the parking lot of a Kmart store on Howe Avenue. Miller and her best friend Jessica had taken their children to the parking lot to skate. Miller brought her backpack because she and her daughter were supposed to stay at defendant's mother's house again that night.

[Wallace] got out of his car and asked to talk to Miller alone. Miller gave Jessica her backpack and asked her to take Miller's daughter home. Miller talked with [Wallace] in the parking lot for at least 10 minutes. She told him she did not think their relationship was working and asked [Wallace] "if [they] could just be friends." [Wallace] told Miller to get in his car and she refused. At that point, [Wallace] pulled a steak knife out of his sweatshirt and repeated his demand that Miller get in the car. [Wallace] indicated he would have hurt Miller if she "didn't have [her] bag." Miller recounted that [Wallace] continued by saying, "[G]et in the car. And he was like I'm not going to do nothing to you.... Let's just go get some cigarettes." Although Miller did not want to go with defendant, she was too afraid of [Wallace] to walk back to Jessica's house. Based on defendant's facial expression and tone of voice, Miller sensed that he was "real mad" at her. She said, "I knew he wasn't playing."

[Wallace] opened the passenger door and Miller got into the car. [Wallace] closed the passenger door and quickly moved to the driver's seat. He placed a six and one-half inch knife on the arm rest between Miller and himself. Miller leaned against the passenger door, as far away from [Wallace] as she could get. [Wallace] drove past a nearby store that sold cigarettes and told Miller they were driving to a different store where the cigarettes were cheaper. [Wallace] also told Miller, "it's not going to be over that eas[ily]." While they were driving, Miller grabbed the knife and tossed it out the open car window. [Wallace] did not say anything.

[Wallace] drove to his mother's house. When they arrived, [Wallace] told Miller that if she started to complain about his behavior or ask for help, he would beat her up. Once inside the house, [Wallace] and Miller sat down at opposite ends of the couch and continued to discuss their relationship. The discussion started off calm and became more heated when Miller told [Wallace] she wanted to end the relationship.

Miller went into defendant's niece's bedroom to call her brother for a ride home. Miller dialed the telephone and leaned her body against the door to prevent [Wallace] from entering the room. [Wallace] pushed open the door, took away the phone, and punched Miller in the face and upper body. The blow to Miller's face broke her glasses. [Wallace] grabbed Miller by her hair and pulled her part way through the door into the hall.

2

Defendant's mother came up and said, "[e]ither you guys going to work it out or you guys are going to leave each other alone." Miller ran into defendant's mother's room. Defendant's mother followed. [Wallace] remained in the hallway, talking to Miller through the door. When Miller was unable to reach her brother by phone, [Wallace] offered to drive her home. Miller reluctantly accepted the offer.

Once in the car, [Wallace] said he needed to stop at a friend's house. Miller stayed in the car while [Wallace] went inside. [Wallace] returned and started driving toward Miller's house. A few minutes later, he pulled out a large butcher knife and placed in on his lap. [Wallace] told Miller, "[you] thought [you] was slick for throwing out the other knife. But when I get around this corner, it's cracking." [Wallace] said, "if I can't have you, nobody will." Miller believed [Wallace] was threatening to take her to a secluded area off Winters Road and kill her.

Miller grabbed the steering wheel in an attempt to swerve and attract the attention of other motorists. [Wallace] punched her twice in the chest. Miller screamed for help, unbuckled her seat belt, opened the passenger door, and jumped out of the moving car. After rolling on the ground, she got up and ran toward an approaching car. Miller felt pain in her leg, arm, and in the back of her head.

The man who picked up Miller took her to a 76 gas station and called 911 on the pay phone. Miller did not want him to call the police because she feared retaliation from [Wallace] and did not want to get [Wallace] into trouble. However, once her rescuer got through to 911, Miller spoke to the operator. The prosecution played an audiotape of the 911 call to the jury.

On the following day, Miller took the train to Toledo, Ohio, where her father lives. She testified she left because she feared for her safety and "didn't want anything else to happen." She was living in Toledo, Ohio, at the time of trial.

Robert Bruce Smith was driving on Grand Avenue between 9:30 and 10:00 p.m. on January 13, 2004. He observed the car ahead of him moving between two lanes of the street. The car appeared to be slowing down or getting ready to stop in the middle of the road. Almost immediately, a young woman, later identified as Miller, opened the passenger door and started to get out. The car was still moving at five or six miles an hour. Miller lost her footing and "went down to her knee, probably onto her back, and then immediately got up." Miller appeared to be hysterical. She ran toward Smith's car and yelled, "Help me. He's going to kill me. Help me."

Initially, Smith was apprehensive, suspecting a possible set up. But Miller's actions convinced Smith that Miller needed help. He unlocked the passenger door of his car and Miller got in. Meanwhile, [Wallace] got out of his car and looked in the direction of Smith's car. Smith testified [Wallace] looked perplexed or confused.

Still apprehensive, Smith sped away from the area. He got on Interstate 80 and drove to a 76 gas station. Miller, upset and crying, told Smith that, "she had gone to a market with some friends or friend and this person had caught up with her and basically taken her at knifepoint away from where she was and they wound up there." Miller told Smith that [Wallace] had punched her. She wanted to go home, but Smith insisted on calling the police.

Sacramento County Sheriff's Deputy Arthur Ward responded to the 911 call.  He contacted Miller at the 76 gas station at Orange Grove and Watt Avenue.  He stated that "[s]he looked very shaken up, very nervous, [and] a little banged up."  Ward observed "road rash," abrasions on Miller's arm and right knee.  Her right foot was swollen.  In addition to the visible injuries, Miller complained of pain in the back of her head, chest, and foot.  Deputy Ward described Miller as "extremely skittish" and "kind of scattered."  He suspected Miller was in shock.

Ward interviewed Miller for 20 to 30 minutes as she sat in the back seat of his patrol car waiting for an ambulance.  She told Ward that [Wallace] hit her in the head and chest in both the house and the car, but Ward was unable to determine which injuries occurred in which location.  Miller also said she caught her foot when she jumped out of defendant's car and "that's when she was drug."  On cross-examination, Ward testified that Miller said she initially got into defendant's car at a 99 Cent Store after [Wallace] told her, "I've got a knife and I'll slit your throat right here. So you better just get in the car."  Miller testified she could not recall making that statement.

Paramedic Brenden Brown arrived at the 76 gas station at 10:05 p.m.  Brown testified that Miller complained of pain to her left jaw, her right foot, and the back of her head.  He observed a minor contusion or swelling on the left side of the back of Miller's head. Miller was transported to Mercy San Juan Hospital.

The prosecution introduced evidence of four prior acts of domestic violence by defendant.  Miller testified that in July 2003, during a time when she and [Wallace] were not getting along, [Wallace] approached her at her brother's house and demanded the key to her apartment.  [Wallace] said he wanted to take a shower.  Miller refused and [Wallace] responded by saying something to the effect of "you know what's going to happen."  When Miller started to go to work the next morning, she discovered that the front and back windows of her car were smashed and her tires were slashed.  [Wallace] telephoned her and said, "have a nice day at work."

Another incident occurred in May 2002. Miller and [Wallace] were arguing in a car, probably because [Wallace] had accused her of cheating.  [Wallace] grabbed both of Miller's arms, pushed her down, and threw her cell phone across the parking lot.

Miller also testified about an incident in December 2001, when she and [Wallace] were living together.  He put her in a headlock and held her so tight she could hardly breathe.  She screamed for him to let her go.  After about two minutes he let go and threw her on the bed.

Annette Perry testified that she had dated [Wallace] about 10 years before. [Wallace] lived with Perry off and on for almost three years.  Perry described an incident that occurred in September 1995.  She and [Wallace] were at a gas station.  Perry saw a friend in a car and walked over to talk to him.  Before she could finish the conversation, [Wallace] came up and hit her in the face so hard she fell to the ground.  Perry screamed for help, but no one at the gas station came.  [Wallace] came back and took her home.  He cried, apologized, and asked Perry not to call the police.

The court permitted the defense to cross-examine Miller about an incident that occurred in August 2001.  Miller acknowledged that police officers had approached her with a warrant and tried to arrest her.  She also acknowledged that she yelled and

aggressively attempted to get away.  However, Miller could not remember kicking anyone or having her hands and feet tied.  On redirect, Miller testified that she regretted the incident and stated that it did not make her a dishonest person.[3]

## II.      BACKGROUND/ PRIOR PROCEEDINGS

On October 8, 2004, a jury convicted Wallace of kidnapping (Cal. Pen. Code, § 207(a)) (Count one), making criminal threats (Cal. Pen. Code, § 422) (Count two), willful infliction of corporal injury on a former cohabitant (Cal. Pen. Code, § 273.5(a)) (Count three), and misdemeanor assault (Cal. Pen. Code, § 240) (Count four).  In a separate proceeding, the jury found true the allegation Wallace had a prior conviction for first degree burglary (Cal. Pen.Code, § 459) within the scope of the California Three Strikes law.  The court sentenced Wallace to 10 years in prison.[4]

On April 12, 2006, the California Court of Appeal, Third District, affirmed the judgment in a reasoned, unpublished decision.[5]

On April 27, 2006, Wallace filed a petition for rehearing in the California Court of Appeal, Third District.[6]  The petition was denied on May 12, 2006.[7]

---

[3]  *People v. Wallace*, 2006 W.L. 951307, 1-4 (Cal. App. 3d. 04/12/2006).  These facts are presumed to be correct under 28 U.S.C. § 2254.

[4]  The court sentenced Wallace to the middle term of five years for kidnapping in count one, doubled for the "strike"; two years for making criminal threats in count two, stayed pursuant to section 654; two years for corporal injury to a former cohabitant in count three, stayed pursuant to section 654; and time served of 30 days in county jail for misdemeanor assault in count four.  *Wallace*, 2006 W.L. at *1.

[5]  Lodged Doc. No. 5.

[6]  Lodged Doc. No. 6.

[7]  Lodged Doc. No. 7.

On May 22, 2006, Wallace filed a petition for review in the California Supreme Court.[8] On July 26, 2006, the court denied the petition.[9]

On February 15, 2007, Wallace filed a petition for writ of habeas corpus in the Sacramento County Superior Court.[10]  On April 16, 2007, the Superior Court denied the petition.[11]

On June 5, 2007, Wallace filed a petition for writ of habeas corpus in the California Court of Appeal, Third District.[12]  On June 14, 2007, the court denied the petition.[13]

On August 7, 2007, Wallace filed a petition for writ of habeas corpus in the California Supreme Court.[14]  On January 16, 2008, the court denied the petition.[15]

On April 11, 2008 Wallace timely filed a Petition for Writ of Habeas Corpus in this Court.  Wallace raises thirteen grounds for relief:

1.  Ineffective Assistance of Counsel: Counsel failed to call Janice Haskins (Wallace's mother) who would have provided exculpatory testimony.
2.  Prosecutorial Misconduct: Prosecutor induced Miller (victim) to testify falsely by threatening her with jail if she did not cooperate.
3.  Ineffective Assistance of Counsel: Counsel failed to interview Miller, whose statements would have exculpated Wallace.

---

[8]  Lodged Doc. No. 8.

[9]  Lodged Doc. No. 9.

[10]  Lodged Doc. No. 10.

[11]  Lodged Doc. No. 11.

[12]  Lodged Doc. No. 12.

[13]  Lodged Doc. No. 13.

[14]  Lodged Doc. No. 14.

[15]  Lodged Doc. No. 15.

4.      Ineffective Assistance of Counsel: Refusal to allow Wallace to take the stand.
5.      Ineffective Assistance of Counsel: Conflict of interest: the Public Defender's Office represented Miller on 4 prior occasions.
6.      Prosecutorial Misconduct: Prosecutor pressured Miller into not speaking with defense counsel.
7.      Ineffective Assistance of Counsel: Counsel was ignorant of the law regarding subpoenaing an out of state witness (Miller), and this ignorance prejudiced Wallace.
8.      Ineffective Assistance of Counsel: Counsel failed to call a witness who would have testified to Wallace's non-violent character and reputation for non-violence.
9.      Trial Court Applied Inconsistent Standards of Admissibility to Defense and Prosecution: The trial court admitted Wallace's prior acts of domestic violence while excluding evidence of Miller's prior assaults on Wallace.
10.     Trial court erred by not granting defense's request for a Mayberry instruction.
11.     Trial court erroneously allowed a Deputy Sheriff to testify that victims often give more accurate statements several days after the incident AND that the Miller did not seem to be making up her story.
12.     Prosecutorial Misconduct: Prosecutor improperly vouched for Miller's credibility and also asked jurors to consider the lack of certain evidence.
13.     There was insufficient evidence to show that Wallace's conduct resulted in a "traumatic condition."

Respondent contends that all but one of Wallace's grounds are properly exhausted, and

Respondent waives the defense of exhaustion with regard to that claim.  Respondent contends

that Wallace's second and sixth ground are procedurally barred.

## III.      STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C.

§ 2254, this Court cannot grant relief unless the decision of the state court "was contrary to, or

involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States" at the time the state court rendered its decision or "was

based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding."[16]  The Supreme Court has explained that "clearly established Federal

_____

[16] 28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[17]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts.[18]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[19]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[20]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[21]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[22]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial

---

[17]  *Williams*, 529 U.S. at 412.

[18]  *Early v. Packer*, 537 U.S. 3, 10 (2002).

[19]  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam).

[20]  *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[21]  *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[22]  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

and injurious effect or influence in determining the outcome.[23]  Petitioner "bears the burden of

proving by a preponderance of the evidence that his constitutional rights have been violated."[24]

     In applying this standard, this Court reviews the last reasoned decision by the state

court.[25]  In addition, the state court's findings of fact are presumed to be correct unless the

petitioner rebuts this presumption by clear and convincing evidence.[26]

     If a federal claim has not been adjudicated on the merits, AEDPA deference is not

required.[27]  In that situation, conclusions of law and mixed questions of fact and conclusions of

law are reviewed *de novo*.[28]  Where there is no reasoned decision of the state court addressing

the ground or grounds raised on the merits and no independent state grounds exist for not

addressing those grounds, this Court must decide the issues *de novo* on the record before it.[29]  In

so doing, because it is not clear that it did not so do, the Court assumes that the state court

---

[23]  *See Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[24]  *Hawkins v. Costello*, 460 F.3d 238, 246 (2d Cir. 2006) (internal quotation marks and citation omitted).

[25]  *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson,* 229 F.3d 112, 118 (2d Cir. 2000).

[26]  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[27]  *Miranda v. Bennett*, 322 F.3d 171, 178 (2d Cir. 2003).

[28]  *DeBerry v. Portuondo*, 403 F.3d 57, 67 (2d Cir. 2005).

[29]  *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

decided the claim on the merits and the decision rested on federal grounds.[30]  This Court gives the assumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[31]

To the extent that the petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[32]  A federal court must accept that state courts correctly applied state laws.[33]  A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[34]  A federal court may not issue a habeas writ based upon a perceived error of state law unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[35]  "[A]bsent a specific constitutional violation, federal habeas corpus

---

[30]  *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *see also Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[31]  *Jimenez*, 458 F.3d at 145-46.

[32]  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[33]  *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[34]  *See Ponnapula v. Spitzer*, 297 F.3d 172, 182 (2d Cir. 2002).

[35]  *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[36]

## IV.    DISCUSSION

As mentioned above, Wallace has raised thirteen grounds for relief.  For purposes of clarity and continuity, this Court will group the discussion of similar claims.

### A.    INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS:

In grounds one, three, four, five, seven and eight, Wallace contends that his defense counsel was ineffective.

Under *Strickland*,[37]  to demonstrate ineffective assistance of counsel, Wallace must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense.[38] A deficient performance is one in which counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[39]  Wallace must show that his counsel's representation was not within the range of competence demanded of attorneys in criminal cases, and that there is a reasonable probability that, but for counsel's ineffectiveness, the result would have been different.[40]  An analysis that focuses "solely on mere

---

[36] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[37]  *Strickland v. Washington*, 466 U.S. 668 (1984).

[38]  *Id.* at 687.

[39]  *Id.*

[40]  *Hill v. Lockhart,* 474 U.S. 52, 57 (1985).

outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."[41]

   *Strickland* and its progeny do not mandate this Court act as a "Monday morning quarterback" in reviewing tactical decisions.[42]  Indeed, the Supreme Court admonished in *Strickland*:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second–guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.[43]

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable– a substantially higher threshold."  *Schriro,*

---

   [41]  *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *see Strickland*, 466 U.S. at 687; *see also Kimmel v. Morrison*, 477 U.S. 365, 374 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *United States v. Cronic*, 466 U.S. 648, 258 (1984) ("the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.").

   [42]  *See Harris v. Reed*, 894 F.2d 871, 877 (7th Cir. 1990).

   [43]  466 U.S. at 689 (internal citations and quotation marks omitted).

*supra,* at 473, 127 S.Ct. 1933.  And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.  See *Yarborough v. Alvarado,* 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").[44]

It is through this doubly deferential lens that a federal habeas court reviews *Strickland* claims under the § 2254(d)(1) standard.[45]

While judicial inquiry into counsel's performance under *Strickland* must be highly deferential, it is "by no means insurmountable," but nonetheless remains "highly demanding."[46] "Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial."[47]

Wallace bears the burden of proving that counsel's trial strategy was deficient.  "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[48]  "[He] bears the heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy."[49]  "In determining whether the defendant received effective assistance of counsel, 'we will neither

---

[44]  *Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct.1411, 1420 (2009).

[45]  *See id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

[46]  *Kimmelman*, 477 U.S. at 382.

[47]  *Id.* at 382.

[48]  *Strickland*, 466 U.S. at 689.

[49]  *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001).

second-guess counsel's decisions, nor apply the fabled twenty-twenty vision of hindsight,' but rather, will defer to counsel's sound trial strategy."[50]  "Because advocacy is an art and not a science, and because the adversary system requires deference to counsel's informed decisions, strategic choices must be respected in these circumstances if they are based on professional judgment."[51]

"A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."[52]  The court must then consider those acts or omissions against "prevailing professional norms."[53]  Even then, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[54]

i.    COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL JANICE HASKINS (WALLACE'S MOTHER) WHO WOULD HAVE PROVIDED EXCULPATORY TESTIMONY

In his first ground, Wallace claims that his counsel was ineffective for failing to call Janice Haskins, a crucial exculpatory witness, who Wallace claims, was crucial to his defense. Specifically, Wallace contends that Ms. Haskins' testimony  would have: 1) corroborated Wallace's defense that he at no time threatened Miller with a knife; 2) shown that Wallace did

---

[50]  *Id*. (quoting *Strickland*, 466 U.S. at 689).

[51]  *Strickland*, 466 U.S. at 681.

[52]  *Id*. at 690.

[53]  *Id*.

[54]  *Id*.

not keep Miller at Ms. Haskins' residence against her will; 3) shown that Miller did not seek help while at Ms. Haskins' house; 4) corroborated Wallace's claim that Miller had gone with him voluntarily from the Kmart to Ms. Haskins' house; and 5) shown that, while Wallace and Miller argued, at no time was there any physical altercation between them.[55]

The Sacramento County Superior Court rejected this claim of ineffective assistance of counsel.[56]  Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[57]  With regard to counsel's failure to call Ms. Haskins, the state court found that Wallace failed to establish either deficient performance or prejudice.

Wallace does not meet his burden under *Stickland*; specifically, he is unable to show that the failure to call Ms. Haskins prejudiced his defense.  In a pretrial interview with a defense investigator, Ms. Haskins stated that she did not know whether Miller was at her home on or around January 13, 2004, nor did she remember any argument or altercation between Wallace and Ms. Miller, on January 13, 2004.[58]  Thus, had Ms. Haskins testified at Wallace's trial, consistent with her statements to the defense investigator, her testimony would not have corroborated Wallace's story at all.  Had Ms. Haskins testified inconsistently with her pretrial statements, her credibility would have been easily challenged on this material issue.  Thus, it is not clear to this Court how Ms. Haskins' testimony would have benefitted Wallace.

---

[55]  Docket No. 1., pp. 16-17.

[56]  Lodged Doc. No 11.

[57]  *Ylst,* 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[58]  Petitioner's Exhibit E.

Wallace is also unable to show prejudice because Ms. Haskins' proffered testimony would not have contradicted any testimony offered by Miller at trial.  Specifically, Miller never testified that Wallace threatened her with a knife or displayed a knife while the two were at Haskins' home.  Nor did Miller ever testify that she tried to escape from Wallace or call the police while she and Wallace were at Ms. Haskins' home.  Indeed, Miller only claimed that she sought assistance by trying to call her brother, a claim which Ms. Haskins corroborated in Wallace's motion for a new trial.[59]  Wallace's claim is also unpersuasive because Ms. Haskins witnessed only a short portion of a prolonged series of events.  Because Ms. Haskins was not present in the Kmart parking lot when Wallace abducted Miller, her testimony on whether Miller left voluntarily would have been speculative.  Similarly, Ms. Haskins would have been unable to contradict Miller's claims that Wallace hit her or dragged her by the hair, because Ms. Haskins was in a different portion of the house when this specific incident occurred.

Wallace is unable to show that his counsel's strategic decision to not call Ms. Haskins to testify prejudiced his case.  Because Wallace is unable to establish prejudice, this Court cannot say that the Sacramento Superior Court's denial of Wallace's first ground involved an unreasonable application of *Strickland*.[60]

---

[59]  Had Ms. Haskins testified regarding details of the alleged altercation between Wallace and Miller at her home on January 13, 2004, her testimony would have been in stark contrast to her statements to defense investigators that she did not remember the incident. However, this Court is simply pointing out that even if Ms. Haskins did recall the events on January 13, 2004, her testimony regarding Miller seeking assistance with would have only corroborated Miller's testimony, not undercut it, as Wallace claims.

[60]  *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

ii.   COUNSEL WAS INEFFECTIVE FOR FAILING TO CONDUCT A PRETRIAL
      INTERVIEW WITH MILLER, WHOSE STATEMENTS WOULD HAVE
      EXCULPATED WALLACE

In his third ground, Wallace contends that his counsel was ineffective for failing to

interview Miller before the trial.  Specifically, Wallace contends that had his counsel interviewed

Miller before trial, counsel would have discovered that Wallace never held a knife to Miller's

throat, nor did he kidnap her.

The Sacramento County Superior Court rejected this claim of ineffective assistance of

counsel.[61]  Because this decision is the last reasoned decision of the state court, it is the

applicable decision for purposes of AEDPA.[62]  In denying this ground, the Sacramento Superior

Court noted that Wallace was unable to show that his counsel's decision to not interview Miller

prejudiced his defense.[63]  The court noted that Wallace's counsel did, in fact, conduct a brief

interview with Miller before she testified and was able to elicit the exact testimony that Wallace

now claims counsel's interview would have revealed.[64]

Aside from making a conclusory claim that Miller would have testified more favorably

had counsel interviewed her before trial, Wallace does not specifically state what Miller would

have said differently on the stand nor does he offer any evidence in support of his claim.[65]

---

[61]  Lodged Doc. No 11.

[62]  *Ylst,* 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[63]  Lodged Doc. No 11.

[64]  On cross-examination, Miller stated that Wallace did not hold a knife to her throat
when he told her to get into his car.  Miller also stated that Wallace never threatened to slit her
throat if she did not get into his car and that Wallace did not throw her into his car.

[65]  In the claim that Miller would have testified more favorably had counsel interviewed
her, Wallace also contends the prosecutor threatened Miller with "jail" if she did not testify

Accordingly, Wallace is unable to show how counsel's reasoned decision[66] to not conduct a pretrial interview prejudiced his defense. Because Wallace is unable to establish prejudice, this Court cannot say that the Sacramento Superior Court's denial of Wallace's third ground involved an unreasonable application of *Strickland*.[67]

iii.   COUNSEL WAS INEFFECTIVE FOR FAILING TO ALLOW WALLACE TO TAKE THE STAND IN HIS OWN DEFENSE

In his fourth ground, Wallace claims that his counsel was ineffective for failing to call him as a witness. Wallace contends that it is very probable that he would have obtained a better result had he testified.

It is well established that "[c]riminal defendants have a right to testify in their own behalf under the Due Process Clause of the Fourteenth Amendment, the Compulsory Process Clause of the Sixth Amendment, and the Fifth Amendment's privilege against self-incrimination.[68] "Although the ultimate decision whether to testify rests with the defendant, he is presumed to

---

consistently with the police report. This Court will address this threat in Wallace's second ground. Any alleged prosecutorial misconduct has no bearing on this issue, especially given that Wallace's counsel was able to elicit all of the information which Wallace claims was essential to his defense, without interviewing Miller.

[66] Because Wallace is unable to show how Miller's testimony would have differed had counsel interviewed her before the trial, this Court need not address whether counsel's decision amounted to ineffective assistance. Wallace states that he and his counsel discussed the possibility of interviewing Miller before the trial. Counsel concluded that Miller would be a damaging witness, given her prior statements to law enforcement and the fact that she told a prosecution investigator that she was afraid of Wallace. Thus, counsel chose not to call Miller as a defense witness and had no reason to interview her.

[67] *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

[68] *Rock v. Arkansas*, 483 U.S. 44, 44 (1987).

assent to his attorney's tactical decision not to have him testify."[69]   "[I]f the defendant wants to testify, he can reject his attorney's tactical decision by insisting on testifying, speaking to the court, or discharging his lawyer.  Thus, waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so."[70]   Because Wallace did not make a statement on the record that he insisted on testifying over his counsel's objection, "the only inquiry is whether [the] advice [to not testify] was sound trial strategy."[71]

The Sacramento County Superior Court rejected this claim of ineffective assistance of counsel.[72]   Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[73]   In denying this claim, the Superior Court stated, "had [Wallace] testified, he likely would have been impeached by his previous criminal record and a statement he gave to the police the date of the incident."  Wallace does not cite any Supreme Court authority wherein counsel was held to have rendered ineffective assistance of counsel for advising his or her client not to testify when the testimony offered could be contradicted and the defendant would be subject to impeachment with multiple prior crimes.[74]

---

[69]   *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

[70]   *Id*. (citations omitted).

[71]   *United States v. Mullins*, 315 F.3d 449, 454 (5th Cir. 2002).

[72]   Lodged Doc. No 11.

[73]   *Ylst,* 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[74]   Wallace claims that he would have testified as follows: On the day of the incident, Wallace was at his mother's home when Miller showed up.  Wanting to avoid a confrontation at his mother's house, Wallace offered to take Miller home.  During the ride home Miller became angry with Wallace because she did not want him to take her home.  Miller punched the

An independent review by this Court does not turn up any such cases.  Accordingly, Wallace is unable to show that his counsel's tactical decision to not call him as a witness was "neither reasonable nor the result of sound trial strategy."[75]  Because Wallace is unable to establish that his counsel's assistance was deficient in any manner, this Court cannot say that the Sacramento Superior Court's denial of Wallace's fourth ground involved an unreasonable application of *Strickland*.[76]

> iv. WALLACE'S COUNSEL SHOULD HAVE DECLARED A CONFLICT OF INTEREST BECAUSE THE PUBLIC DEFENDER'S OFFICE REPRESENTED MILLER ON FOUR PRIOR OCCASIONS

In his fifth ground Wallace claims that his counsel was ineffective for failing to declare a conflict of interest which prejudiced his defense.  Wallace claims that on four prior occasions, Miller was represented by the same public defender's office that represented him in this case. Wallace notes that the cases in which Miller was represented by the public defender all involved domestic violence against Wallace.  Wallace concludes that this representation created a conflict of interest and a more favorable result would have certainly been obtained had he been represented by a member of the "conflict panel."

---

windshield, shattering it, grabbed a crowbar and assaulted Wallace with it, and then leapt from the moving vehicle to flag down another motorist.

Wallace's proffered testimony could have been subject to impeachment by Miller, Robert Smith (the motorist who picked up Miller and assisted her) and "Jessica" (Miller's friend who saw Wallace pick up Miller in the Kmart parking lot).  Additionally, Wallace was subject to impeachment with evidence of his prior convictions which included burglary and theft.  *See Dows v. Wood*, 211 F.3d 480, 487 (9th Cir. 2000) (actually suggesting that a criminal defendant testify when the defendant had three prior convictions for robbery and assault would be ineffective assistance).

[75] *Murtishaw*, 255 F.3d at 939.

[76] *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

It is well settled that a criminal defendant has a right to a conflict free representation.[77] A habeas petitioner alleging ineffective assistance of counsel ordinarily must show both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the defense, *i.e.*, that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[78]  In some cases, prejudice may be presumed where a petitioner shows counsel "actively represented conflicting interests."[79]  However, the Supreme Court has declined to approve the application of a presumed prejudice rule to conflicts other than those caused by the joint representation of two or more defendants.[80]  Accordingly, Wallace must show both that an actual conflict existed and that this conflict prejudiced his defense.

The Sacramento County Superior Court rejected this claim of ineffective assistance of counsel.[81]  Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[82]  The Superior Court denied Wallace's claim for two reasons:  The court first held that Wallace submitted no evidence that Miller was ever represented by the Public Defender's Office; the court then held that California courts have routinely held that no actual or potential conflict of interest exists simply because the Public

---

[77]  *Cuyler v. Sullivan*, 446 U.S. 335, 345 (1980).

[78]  *Strickland*, 466 U.S. at 687-88.

[79]  *Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

[80]  *Mickens*, 535 U.S. at 174-76.

[81]  Lodged Doc. No 11.

[82]  *Ylst*, 501 U.S. at 804; *Jones*, 229 F.3d at 118.

Defender's Office previously represented a prosecution witness.[83]  In this factual scenario, a conflict of interest only arises when a particular public defender has acquired confidential information due to his or her previous representation of the witness.[84]

As an initial matter, this Court will consider whether the successive representation created a conflict of interest.  It is clearly established Supreme Court precedent that "successive representation" may pose an actual conflict of interest because it may have an adverse affect on counsel's performance.[85]  In cases in which the alleged conflict of interest is based on the prior representation of a prosecution witness by defense counsel, the courts have examined the particular circumstances to determine whether counsel's undivided loyalties reside with his current client.[86]

> In such cases there are two factors that arguably may interfere with effective cross-examination and, therefore, the effective assistance of counsel.  First is concern that the lawyer's pecuniary interest in possible future business may cause him to avoid vigorous cross-examination which might be embarrassing or offensive to the witness.

---

[83]  Lodged Doc. 11.

[84]  Lodged Doc. 11.

[85]  *See Mickens*, 535 U.S. at 175-176 (declining to decide whether when an attorney is constrained by successive representation, only an adverse affect on the attorney's performance must be shown or whether prejudice must be shown in order to obtain relief, but not questioning that successive conflicts may pose Sixth Amendment difficulties).

[86]  *See United States v. James*, 505 F.2d 898 (5th Cir. 1975); *United States v. Cochran*, 499 F.2d 380 (5th Cir. 1974); *United States v. Donatelli*, 484 F.2d 505 (1st Cir. 1973); *United States v. Alberti*, 470 F.2d 878 (2d Cir. 1972); *United States ex rel. Kachinski v. Cavell*, 453 F.2d 581 (3rd Cir. 1971); *Harrison v. United States*, 387 F.2d 614 (5th Cir. 1968); *Olshen v. McMann*, 378 F.2d 993 (2d Cir. 1967); *Commonwealth v. Smith*, 291 N.E.2d 607 (Mass.1973).

The second is the possibility that privileged information obtained from the witness might be relevant to the cross-examination.[87]

The first factor is clearly not relevant in this case.  With respect to the second factor: Wallace does not allege that the particular public defender who represented him ever previously represented Miller, nor does he allege that his counsel obtained any confidential information that may have affected her cross-examination or handling of the case.  Thus, Wallace's argument is essentially:  prior representation of a prosecution witness by a defense firm or Public Defender's office creates a *per se* actual conflict-of-interest.  Wallace cites no Supreme Court authority in support of this proposition, and independent research by this Court reveals none.

Because Wallace has failed to show that an actual conflict existed, this Court need not discuss whether there was prejudice.[88]  Because Wallace is unable to establish that any conflict existed, this Court cannot say that the Sacramento Superior Court's denial of Wallace's fifth ground involved an unreasonable application of *Strickland*.[89]

v.      COUNSEL WAS INEFFECTIVE FOR FAILING TO SUBPOENA MILLER

---

[87]  *United States v. Jeffers*, 520 F.2d 1256, 1264-65 (7th Cir. 1975) (noting that pecuniary interests may have motivated the Ninth Circuit to order a remand for a hearing on the charges of conflict of interests in *Tucker v. United States*, 235 F.2d 238 (1956)).

[88]  Wallace contends that he wanted to pursue a "self-defense" theory and that somehow this conflict prevented his counsel from exploring this theory more.  Had Wallace put on a self-defense theory, he would have been forced to testify on his own behalf.  As noted above in FN 73, Wallace's proffered testimony *along with his theory of self-defense* would have been contradicted by three different prosecution witnesses.  Furthermore, even if a conflict did somehow exist, Wallace fails to show a causal nexus between the conflict and his counsel's well reasoned decision to not pursue a self-defense theory.  Finally, the record is clear that Wallace's counsel sought to introduce Miller's prior bad acts to impeach her, and cross-examined her vigorously.  Wallace would be unable to show prejudice.

[89]  *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

In his seventh ground Wallace contends that his counsel was ineffective for failing to subpoena Miller to testify on his behalf.  Specifically, Wallace states that his counsel was ignorant of the law regarding out of state subpoenas, and that the failure to subpoena Miller prejudiced his defense.  The Sacramento County Superior Court rejected this claim of ineffective assistance of counsel.[90]  Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[91]  In denying this claim, the Superior court observed it was substantially similar to the claim that Wallace's counsel was ineffective for failing to conduct a pretrial interview with Miller.  The court noted that Miller ultimately testified and defense counsel was able to flesh out any claimed inaccuracies in the police report.[92]

This Court agrees with the Superior Court's determination that these two claims are similar.  Aside from making a conclusory claim that Miller would have testified more favorably had his counsel called Miller as a defense witness, Wallace does not offer any evidence in support of his claim.  Rather, Wallace seems to imply that because Miller was called by the prosecution, she was foreclosed from testifying to anything that might have exculpated Wallace.  Wallace states that had his counsel called Miller as a witness, she would have testified that Wallace did not kidnap her or threaten her with a knife.  However, on cross-examination, Miller stated that Wallace did not hold a knife to her throat when he told her to get into his car.  Miller also stated that Wallace never threatened to slit her throat if she did not get into his car and that

---

[90]  Lodged Doc. No 11.

[91]  *Ylst*, 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[92]  Lodged Doc. No 11.

24

Wallace did not throw her into his car.[93]  Wallace also seems to ignore the fact that his counsel

was able to elicit testimony regarding the inaccuracies in the police report.  Thus, Wallace is

unable to show that the failure to call Miller as a defense witness prejudiced his defense.

Because Wallace is unable to establish prejudice, this Court cannot say that the Sacramento

Superior Court's denial of Wallace's seventh ground involved an unreasonable application of

*Strickland*.[94]

> vi.   COUNSEL WAS INEFFECTIVE FOR FAILING TO INTERVIEW AN
>        EXCEPTIONALLY CREDIBLE CHARACTER WITNESS WHO WOULD
>        HAVE TESTIFIED THAT WALLACE WAS KNOWN FOR HIS GOOD
>        CHARACTER AND HIS REPUTATION FOR NON-VIOLENCE

In his eighth ground, Wallace contends that his counsel was deficient for failing to

interview William Yankey, a local attorney who was willing to testify favorably as a character

witness for Wallace.

The Sacramento County Superior Court rejected this claim of ineffective assistance of

counsel.[95]  Because this decision is the last reasoned decision of the state court, it is the

applicable decision for purposes of AEDPA.[96]  In denying this claim, the Superior court provided

two reasons: 1) Because Mr. Yankey was present at Wallace's preliminary hearing and indicated

to the trial court that he likely would substitute in as Wallaces's counsel, he may have been

unable to testify at trial; and 2) Mr. Yankey's testimony would have allowed the prosecution to

---

[93]  Reporter's Transcript on Appeal, pg. 554.

[94]  *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

[95]  Lodged Doc. No 11.

[96]  *Ylst,* 501 U.S. at 804; *Jones*, 229 F.3d at 118.

inquire into whether Mr. Yankey was aware of Wallace's prior convictions for crimes of moral turpitude.

In his petition to this Court Wallace argues that because his counsel did not put on any witnesses, and the prosecution presented significant testimony regarding Wallace's prior acts of domestic violence, his counsel had no reason not to call Mr. Yankey.  Wallace's argument is not persuasive.  As noted by the Superior Court, Wallace's attorney made a strategic decision not to expose the jury to Wallace's three prior convictions.  Wallace cites no law and provides no facts which demonstrate that this decision was unreasonable.

Wallace is also unable to show prejudice.  Had Mr. Yankey testified on behalf of Wallace, there is significant probability that his testimony would have been more detrimental than beneficial.  Specifically, in questioning Mr. Yankey about Wallace's prior crimes and previous instances of domestic violence, the prosecution would have necessarily shown one of two things: 1) If Mr. Yankey were completely unaware of Wallace's prior crimes and instances of domestic abuse, the prosecution would have showed that Mr. Yankey did not really know Wallace well enough to testify as a character witness; or in the alternative 2) If Mr. Yankey were aware of Wallace's prior crimes and instances of domestic abuse, his opinion of Wallace as a non-violent individual and man of good moral character was unsound.  Thus, Wallace cannot show that Mr. Yankey's testimony would have aided his defense in any significant manner.  Because Wallace is unable to establish prejudice, this Court cannot say that the Sacramento Superior Court's denial of Wallace's eighth ground involved an unreasonable application of *Strickland*.[97]

---

[97] *See Knowles v. Mirzayance*, 556 U.S. ___, 129 S. Ct. 1411, 1420.

B.        CLAIMS OF PROSECUTORIAL MISCONDUCT

In his second, sixth and twelfth grounds Wallace alleges prosecutorial misconduct.

The Due Process Clause of the Fourteenth Amendment is violated when prosecutorial misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."[98]  In assessing whether the conduct complained of meets this test, this Court must consider "the severity of the misconduct, the measures adopted to cure it, and the certainty of conviction in the absence of the misconduct."[99]  As a threshold matter however "[i]t is the petitioner's burden to prove his custody is in violation of the Constitution, laws or treaties of the United States."[100]  This burden of proof must be carried by a preponderance of the evidence.[101]

a.        PROCEDURAL BAR

Respondent contends that Wallace's second and sixth grounds are procedurally barred. Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."[102]  This Court may not reach the merits of procedurally defaulted claims, that is, claims "in which the petitioner failed to follow applicable state procedural rules

---

[98] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[99] *United States v. Shareef*, 190 F.3d 71, 78 (2d Cir. 1999).

[100] *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (citing *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir.1996)).

[101] *Id*. (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir.1994)).

[102] *Coleman,* 501 U.S. at 729.

in raising the claims . . . ."[103]   Under California law a habeas petitioner must attach the documentary evidence or affidavits that support the claim to the petition.[104]   "[I]n order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well established at the time of the petitioner's purported default."[105]   Nevertheless, a federal court still can hear a procedurally defaulted federal claim if the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."[106]

The California Supreme Court has long held that claims which could have been raised on appeal, but were not, cannot become grounds for habeas relief.[107]   The California Supreme Court has also held that the *Dixon* bar is applied "whenever it appears that [the] bar is applicable" except in instances of ineffective assistance of counsel.[108]   The Superior Court of California denied Wallace's second and sixth habeas grounds as procedurally barred by *Dixon*, because Wallace had failed to raise the claims on his direct appeal to the California Court of Appeal.[109]

---

[103] *Sawyer v. Whitley,* 505 U.S. 333, 338 (1992).

[104] *People v. Duvall*, 886 P.2d 1252, 1258 (1995); *In re Harris*, 855 P.2d 391, 397 n. 5 (1993); *In re Clark*, 855 P.2d 729, 750 n. 16 (1993).

[105] *Morales v. Calderon,* 85 F.3d 1387, 1393 (9th Cir. 1996) (internal quotation marks and citation omitted).

[106] *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

[107] *In re Dixon*, 41 Cal. 2d 756, 759 (1953).

[108] *In re Robbins*, 18 Cal. 4th 770, 813 fn. 34 (1998).

[109] Lodged Doc. No. 11.

The California Supreme Court denied Wallace's habeas petition without comment.[110]  In doing so, the California Supreme Court is presumed to have adopted the Dixon bar.[111]

Wallace has not submitted any evidence showing cause for his procedural default; nor does Wallace show prejudice.  Therefore, Wallace's second and sixth claims are procedurally defaulted.

###### i.   PROSECUTOR INDUCED MILLER TO TESTIFY FALSELY BY THREATENING HER WITH TIME IN JAIL IF SHE DID NOT COOPERATE

In his second ground, Wallace claims that the prosecutor improperly induced Miller to testify falsely be threatening her with "jail" if she did not "cooperate."  As noted above, this claim has been procedurally defaulted.  However, even if this claim were not procedurally defaulted, Wallace would not prevail.

As noted above, Wallace bears the "burden to prove his custody is in violation of the Constitution, laws or treaties of the United States."[112]  Wallace does not meet this burden.  In support of his claim that the prosecutor threatened Miller improperly, Wallace references a letter from Randal Costa, a private investigator.  In this letter, Mr. Costa indicates that he interviewed Miller; and that during this interview Miller stated that she was served with a subpoena and was told by the D.A. that if she did not appear she would face legal consequences (ie. jail).[113]  This exhibit is troublesome for two reasons: 1) the letter represents at least two levels of hearsay (Miller to Costa, Costa to Wallace); and 2) even if the content of the letter were true, Wallace

---

[110]  Lodged Doc. No. 15.

[111]  *See Ylst*, 501 U.S. at 803-4 (1991).

[112]  *Silva*, 279 F.3d at 835 (citing *Snook v. Wood*, 89 F.3d 605, 609 (9th Cir.1996)).

[113]  Petitioner's Ex. G.

overstates the comment by the prosecutor; there is no indication that Miller was being asked to do anything other than show up and testify at the trial (which, after being served with a subpoena, she had a legal obligation to do).

Wallace next observes that Miller made several inconsistent statements to different police officers and her testimony on direct examination varied from her testimony on cross-examination.[114]  Citing Miller's inconsistent statements, Wallace alleges the prosecutor knew or should have known that Miller testified falsely against him at trial and that he failed in his constitutional duty to disclose or correct her false testimony.  Wallace's argument is unpersuasive.  The fact that Miller made inconsistent statements to police "does not in and of itself establish that she testified falsely at trial, much less that the prosecutor knew or reasonably should have known that she testified falsely."[115]  Indeed, when faced with inconsistent statements from witnesses, both prosecutors and defense attorneys "necessarily trust the jury to determine what is true, or whether reasonable doubt remains about what is true."[116]  Indeed, the fact that Miller discussed the inconsistences in the police reports supports the fact that she was encouraged to testify truthfully.

ii.   PROSECUTOR PRESSURED MILLER INTO NOT SPEAKING WITH
      DEFENSE COUNSEL

In his sixth ground, Wallace claims that the prosecutor improperly pressured Miller into not speaking with defense counsel.  As noted above, this claim has been procedurally defaulted.  However, even if this claim were not procedurally defaulted, Wallace would not prevail.

---

[114]  Petitioner's Ex. M, N.

[115]  *California v. Trombetta*, 467 U.S. 479, 485 (1984).

[116]  *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995).

The only evidence that Wallace submits in favor of his position is the letter from Mr. Costa which, as noted above, represents at least two levels of hearsay.  Furthermore, Miller's statements to Costa are directly contradicted by the sworn, signed Declaration of Melanie Richard, a Victim Advocate at the District Attorney's Office.  Richard was present when the prosecutor allegedly pressured Miller into not talking to Wallace's counsel.  In her Declaration, Ms. Richard stated that the Deputy D.A. told Miller that Miller "had an absolute right to speak to or not speak to whomever she wanted to about the case" and that "[a]t no time whatsoever did the Deputy [D.A.] inform Ms. Miller not to speak to Mr. Wallace's defense attorney . . . ."[117] Wallace is unable to show, by a preponderance of evidence, that Miller's decision to not speak to defense counsel was anything but voluntary.[118]

    iii.    PROSECUTOR IMPROPERLY VOUCHED FOR MILLER'S CREDIBILITY AND ALSO ASKED JURORS TO CONSIDER THE LACK OF CERTAIN EVIDENCE

In his twelfth ground, Wallace claims that the prosecutor improperly vouched for Miller's credibility during the voir dire and in her closing argument.  Wallace also alleges that the prosecutor made improper comments regarding the state of the evidence.

    a.    Improper Vouching

Although Wallace has characterized this ground as prosecutorial misconduct on the basis of improper vouching, the substance of his complaint focuses on the prosecutor's statements to the jury that she and her office believed that the defendant was guilty.  Wallace's argument is

---

[117]  Petitioner's Exhibit A.

[118]  *Woodford*, 279 F.3d at 835.

better characterized as: the prosecutor committed misconduct when she repeatedly stated that

"the people" and the "district attorney" believed that Wallce had committed a crime.

In denying Wallace's claim, the Third District Court of Appeal held:

> "A prosecutor may make 'assurances regarding the apparent honesty or reliability of' a witness 'based on the "facts of [the] record and the inferences reasonably drawn therefrom." ' [Citation.] But a 'prosecutor is prohibited from vouching for the credibility of witnesses or otherwise bolstering the veracity of their testimony by referring to evidence outside the record.' [Citation.]" ( People v. Turner (2004) 34 Cal.4th 406, 432-433.) Similarly, "it is misconduct for a prosecutor to express a personal belief in the defendant's guilt if there is a substantial danger that the jurors will construe the statement as meaning that the belief is based on information or evidence outside the trial record [citation], but expressions of belief in the defendant's guilt are not improper if the prosecutor makes clear that the belief is based on the evidence before the jury [citation]." ( People v. Mayfield (1997) 14 Cal.4th 668, 781-782.) "Although defendant singles out words and phrases, or at most a few sentences, to demonstrate misconduct, we must view the statements in the context of the argument as a whole. [Citation.]" ( People v. Dennis (1998) 17 Cal.4th 468, 522.)
>
> Prosecutorial misconduct violates the federal Constitution when it " 'infects the trial with such unfairness as to make the conviction a denial of due process.'" ( People v. Cole (2004) 33 Cal.4th 1158, 1202.) Even if such misconduct does not render the trial fundamentally unfair, it may violate California law if "it involves 'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" ( Ibid.) When the claim of prosecutorial misconduct "focuses on comments made by the prosecutor before the jury, the question is whether there is a reasonable likelihood that the jury construed or applied any of the complained-of remarks in an objectionable fashion." (People v. Berryman (1993) 6 Cal.4th 1048, 1072, overruled on another ground in People v. Hill (1998) 17 Cal.4th 800, 823.)
>
> The gist of the prosecutor's questions to the prospective jurors was that although victims of domestic violence may not want to prosecute their abusers, the district attorney has a responsibility to prosecute domestic violence, a crime, when the evidence warrants. As the prosecutor reiterated at the beginning of her closing argument, "As a prosecutor I do not represent the victim. I am not [Miller's] attorney. I represent the people of the state of California...." The prosecutor did not vouch for Miller's credibility and there was no suggestion she was privy to any inside information regarding the defendant's guilt. Thus, there is no basis for defendant's claim the prosecutor committed misconduct during voir dire.[119]

---

[119] *Wallace*, 2006 WL 951307 at *10. The Court of Appeal acknowledged that Wallace's counsel did not object to the alleged misconduct during the trial. "[U]nder the rule of *People v. Green*, 27 Cal.3d 1, 27-34 (Cal. 1980), a defendant must object and seek a curative

The Supreme Court has held that a prosecutor "must refrain from interjecting personal beliefs into the presentation of his [or her] case."[120]

> The prosecutor's vouching for the credibility of witnesses and *expressing his personal opinion concerning the guilt of the accused* pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence.[121]

Each of these two concerns is present in this case. The prosecution was dealing with a recalcitrant witness,[122] who also happened to be the victim.

During the voir dire, the prosecutor made several comments concerning the People's belief that a crime had been committed, the District Attorney's duty and obligation to prosecute

---

admonition to preserve the point for appeal. If he has not done so, [the court] will reach the point only if the misconduct is such that the harm could not have been cured by a timely admonition." *People v. Lewis*, 50 Cal.3d 262, 282 (Cal.1990). Rather than applying the contemporaneous objection bar and discussing the merits of Wallace's claim in the alternative, the Court of Appeal addressed only the merits of Wallace's argument and found the prosecutor's comments during voir dire did not amount to misconduct. Had the Court of Appeal applied the contemporaneous objection bar it may well have served as an adequate and independent state ground, sufficient to foreclose review by this Court.

[120] *United States v. Young*, 470 U.S. 1, 8 (1985) (quoting and citing with approval *ABA Model Code of Professional Responsibility*, DR 7- 106(C)(4) (1980)).

[121] *Id.* at 18-19 (citing *Berger v. United States*, 295 U.S. 78, 88-89 (1935) (emphasis added).

[122] In her statements to the prosecution investigator on July 15, 2004, Miller stated that she did not want anything to happen to Wallace and that the prosecutor could let him go. In another interview with the prosecution investigator on 7/16/2004 Miller stated that she did not want to return to Sacramento. In that same July 16, 2004, interview, Miller also stated that line 13 of her statement she gave to Deputy Ward on January 13, 2004, was inaccurate. Finally, the fact that the prosecution itself seemed to imply that Miller did not want to press charges is evidence, in and of itself, that they thought she was a reluctant participant in the proceedings.

if we believe that a crime has been committed,[123] and policy of the District Attorney's office to

intervene (prosecute) and protect individuals when "we believe a crime has been committed."[124]

The concern, therefore, is that the prosecutor implied that she would not prosecute Wallace if she

did not believe him to be guilty; she thereby wrongfully placed her personal opinion of

Wallace's guilt into the juror's consideration.  Her implication to the jury that she was

prosecuting Wallace because she believed him to be guilty was tantamount to an assertion that

she, her office and the government believed in Wallace's guilt at the very inception of the

prosecution.  Such belief must have been founded upon the prosecutor's original and

independent investigation of the charge, and therefore in all likelihood was based, in part at least,

upon facts which did not appear and which perhaps could not have been shown in evidence.

This is universally held to be an improper argument.[125]

Certainly the jury had a duty to apply the law to the facts and determine Wallace's guilt

or innocence irrespective of Miller's reluctance to press charges.  However, this Court cannot

---

[123]   Reporter's Transcript on Appeal, pp. 170, 173, 175, 176, 247, 298, 299.

[124]   Reporter's Transcript on Appeal, pp. 299-300.

[125]   *United States v. Young*, 470 U.S. at 8; *United States v. Swanson*, 943 F.2d 1070, 1078-1079 (9th Cir. 1991) (Hug, J., concurring) (Improper argument "when defense counsel asserts, in effect, 'I believe this man is innocent because otherwise I would not be here defending him.'" Equally improper argument when a prosecutor states "I know he's guilty so don't feel bad about doing your job and finding him guilty."  Such a statement invades "the province of the jury."); *United States v. Swafford*, 766 F.2d 426 (10th Cir.1985) (". . . a lawyer's assertion of personal opinion during trial is an example of improper advocacy"); *United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir.1981) ("[a] personal expression of [a] defendant's culpability, which inserts an extraneous and irrelevant issue before the jury, is . . . objectionable"); *United States v. Alanis*, 611 F.2d 123, 126-27 (5th Cir. 1980) (an attorney may not express his personal opinion regarding a defendant's guilt); *United States v. Bess*, 593 F.2d 749,754 (6th Cir.1979) (personal opinions of counsel have "no place at trial"); *United States v. Cain*, 544 F.2d 1113, 1116 (1st Cir.1976) ( "It is, of course, elementary that statements of counsel as to personal belief or opinion are improper").

accept Respondent's contention that the prosecutor was simply asking the jury to disregard Miller's reluctance to prosecute.  "The principal purpose of voir dire is to probe each prospective juror's state of mind to enable the trial judge to determine actual bias and to allow counsel to assess suspected bias or prejudice.  Thus, a voir dire examination must be conducted in a manner that allows the parties to effectively and intelligently exercise their right to peremptory challenges and challenges for cause."[126]  A party should not use voir dire for the purpose of indoctrinating, instructing, educating, cajoling, or prejudicing  prospective jurors.

What is most determinative is that the prosecutor could have informed the jurors of their duty to disregard Miller's reluctance to prosecute without expressing an opinion as to Wallace's guilt.  During the voire dire, the prosecutor could have asked the same substantive questions and elicited the same responses from the potential jurors without proffering any opinion as to Wallace's guilt or innocence.  This Court cannot find that the comments made by the prosecutor were not improper.[127]

The Due Process Clause of the Fourteenth Amendment is violated when prosecutorial misconduct "so infect[s] the trial with unfairness as to make the resulting conviction a denial of due process."[128]  "Moreover, the appropriate standard of review for such a claim on writ of

---

[126] *Darbin v. Nourse*, 664 F.2d 1109, 1112-1113 (9th Cir. 1981).

[127]  The Court of Appeal decided the merits of whether the prosecutor's statements constituted improper vouching for the witness, a similar but distinct issue from the one this Court has addressed.  As noted above, the substance of this argument is not whether the prosecutor vouched for Miller's credibility; admittedly she did not mention Miller or how credible she was.  Rather, Wallace argues that the prosecutor's statements constituted an expression as to the opinion regarding the guilt of the accused.

[128] *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"[129]  In assessing whether the conduct complained of meets this test, this Court must consider several factors:  whether the misconduct was isolated or part of an ongoing pattern,[130] whether the trial court issued a curative instruction,[131] whether the prosecutor manipulated or misstated the evidence,[132] whether the misstatement implicated specific rights of the accused such as the right to counsel or the right to remain silent,[133] and the weight of evidence of guilt.[134]

The prosecutor did not just make a single, isolated remark regarding her opinion of Wallace's guilt.  Rather, she made multiple references to the People's belief that a crime had been committed, the "duty to prosecute" based on a belief that Wallace had committed a crime, and the "District Attorney's policy" to prosecute based on a belief that a crime had been committed.  Therefore, the record suggests that the misconduct was not merely a single, isolated statement.[135]

Because Wallace's counsel did not object to the statements and the trial court did not raise the issue *sua sponte*, the trial court did not address the prosecutor's statements when they

---

[129]  *Id.*

[130]  *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987).

[131]  *Greer v. Miller*, 483 U.S. 756, 766 fn. 8 (1987).

[132]  *Darden*, 477 U.S. at 181.

[133]  *Id.*

[134]  Compare *Young*, 470 U.S. 1 (finding "overwhelming" evidence of guilt) with *United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor).

[135]  *Lincoln*, 807 F.2d at 809.

were spoken.  However, after the jury was empaneled and before the trial began, the court did

instruct the jurors that they were not to "be biased against the defendant because he has been

arrested for this offense, charged with a crime, or brought to trial."[136]  The court went on to tell

the jurors that "none one of these circumstances is evidence of guilt and you must not infer or

assume that he or she is more likely to be guilty than not guilty."[137]  The court also instructed the

jurors that they were to "base their decisions on the facts and the law"[138] and that they were to

"determine the facts from the evidence and not from any other source."[139]  After both sides

rested, the court re-read these instructions to the jurors before they began their deliberations.

Under the circumstances, and in light of the fact that Wallace's counsel failed to object to the

prosecutor's statements, these instructions were sufficient to cure any misstatements by the

prosecutor.  This Court must assume in the absence of evidence to the contrary that the jury

followed those instructions.[140]  Wallace has not submitted any evidence that the jurors

disregarded these instructions.

It is also clear that the prosecutor did not manipulate or misstate the evidence.  Indeed,

she did not reference any specific evidence in her misstatement.  Nor did the prosecutor's

---

[136]  Clerk's Transcript on Appeal, pp. 105-06.

[137]  Clerk's Transcript on Appeal, pg. 106.

[138]  Clerk's Transcript on Appeal, pg. 105.

[139]  Clerk's Transcript on Appeal, pg. 105.

[140]  *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis v. Franklin*, 471 U.S. 307, 324 fn. 9 (1985).

misstatements implicate any of Wallace's specific rights, such as the right to counsel, a right to refuse to testify or the right to a presumption of innocence.[141]

Finally, this Court must consider the certainty of conviction in the absence of the misconduct.  After independently reviewing the record, this Court concludes the prosecution presented compelling evidence in support of the charges.  The prosecution's strongest evidence against Wallace was Miller's own testimony regarding the kidnaping.  Miller was subject to a thorough cross-examination, and while her testimony was inconsistent in some respects, most of her inconsistences had to do with collateral matters.  Miller's testimony that Wallace brandished a knife, frightened her into coming with him and later assaulted her was unimpeached.

Miller's testimony was also corroborated by multiple witnesses.  The prosecution called Robert Smith, the man who assisted Miller after she fled from Wallace's vehicle.  Smith testified that Miller was "hysterical"and yelling "he's going to kill me. Help me."[142]  The prosecution also called Brendan Brown the firefighter and paramedic who treated Miller and took a report of her injuries.  Brown noticed bruising and minor swelling on the back of her head and testified that Miller had complained of pain in her jaw and occipital region.[143]  Both of these witnesses buttressed Miller's testimony that Wallace kidnaped and assaulted her.

---

[141]  At first blush it may appear that the prosecutor's misstatement indirectly implicated Wallace's right to be presumed innocent.  However, this is not one of the concerns implicated when a prosecutor improperly interjects his or her personal opinion about the defendant's guilt.

[142]  Reporter's Transcript on Appeal, pp. 637-38

[143]  Reporter's Transcript on Appeal, pg. 668.

Finally, the prosecution called Annette Perry, an ex-girlfriend of Wallace, who testified that Wallace had been physically abusive toward her in the past.[144]  This testimony was admitted under California Evidence Code § 1109, and the court instructed the jurors that if they believed Perry's testimony, they were allowed to infer that Wallace was likely to have abused Miller on the day in question.  Taken as a whole, the evidence against Wallace was compelling.

After evaluating and weighing all of the relevant factors, this Court cannot conclude that the prosecutor's misstatements so infected Wallace's trial as to amount to a deprivation of due process.  It is well settled that "[a] defendant is entitled to a fair trial but not a perfect one."[145]  This case presents an excellent example of a trial of an imperfect yet fundamentally fair trial.  Because all but one of the factors weigh against Wallace, he is unable to show a denial of due process.[146]  Wallace is not entitled to relief on his twelfth ground.

### C.   TRIAL COURT APPLIED INCONSISTENT STANDARDS OF ADMISSIBILITY TO DEFENSE AND PROSECUTION

In his ninth ground Wallace claims the trial court violated his right to present a defense by excluding evidence that Miller had been arrested on three prior occasions for domestic violence against Wallace.  Wallace also contends the trial court violated his due process rights by applying inconsistent standards to the admission of similar evidence offered by the prosecution and the defense.

---

[144]   Reporter's Transcript on Appeal, pp. 652-60.

[145]   *Lutwak v. United States*, 344 U.S. 604, 619 (1953).

[146]   *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

To the extent that Wallace raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[147]  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[148]  This principle applied to federal habeas review of state convictions long before AEDPA.[149]  A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[150]  It does not matter that the state supreme court's statement of the law was dictum if it is perfectly clear and unambiguous.[151]

---

[147] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982) (federal court must accept that state courts correctly applied state laws); *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona*, 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[148] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT&T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law. . . .").

[149] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[150] *See Bradshaw*, 546 U.S. at 76-78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

[151] *Id.* at 76.

A determination of state law by a state intermediate appellate court is also binding in a federal habeas action.[152]  This is especially true where the highest court in the state has denied review of the lower court's decision.[153]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[154]  Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[155]  "[A]bsent a specific constitutional violation, federal habeas corpus review of trial error is limited to whether the error 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"[156]

A brief summary of the relevant facts and applicable California law are necessary at this point.  During a pretrial hearing the defense opposed the prosecution's motion to introduce evidence of Wallace's prior acts of domestic violence against Miller and another woman pursuant to Evidence Code section 1109.[157]  At the pretrial hearing, defense counsel argued that

---

[152] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[153] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court."); *Shannon v. Newland*, 419 F.3d 1083, 1087 (9th Cir. 2005) (same).

[154] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[155] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[156] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

[157] *Wallace*, 2006 WL 951307 at 4.  Cal. Evidence Code § 1109 provides, in relevant part: "Except as provided in subdivision (e) or (f), in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of

if the court permitted the prosecution to introduce evidence of Wallace's past misconduct under Evidence Code section 1109, it should allow the defense to introduce evidence of three prior incidents in which Miller was arrested following altercations where Wallace was the victim.[158] The court held that Evidence Code section 1109 could not be applied to Miller's past acts of domestic violence because the statute was narrowly drawn to apply only to incidents of domestic violence committed by a defendant.[159] "After applying Evidence Code sections 1109 and 352,[160] it ruled the evidence of [Wallace's] prior acts of domestic violence was admissible. The court reserved its ruling on the admissibility of Miller's prior acts of domestic violence, stating, 'It depends on what the defense may be.'"[161]

"The parties continued to argue the issue. The prosecutor asserted the evidence of Miller's misconduct was irrelevant unless defendant claimed self-defense."[162] Defense counsel acknowledged it was unlikely the defense would assert a theory of self-defense but argued that Miller's past instances of violence were relevant to her character for truthfulness and to establish a history of being violent toward Wallace. The court again held that Miller's prior bad acts

---

other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352."

[158] *Id.*

[159] *Id* at 5.

[160] Cal. Evidence Code § 352 provides: The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.

[161] *Id.*

[162] *Id.*

appeared inadmissible at that point, but held that if the testimony rendered them relevant, the court stated it would revisit the issue.[163]

Right before Miller testified at trial, defense counsel argued that two of the prior incidents, in which Miller was arrested but not convicted, were adequate to impeach her because they constituted misconduct.[164]  The court agreed they were the types of incidents that could be used for impeachment if they qualified under an Evidence Code section 352 analysis.

> Thereafter, the court excluded evidence of a 2003 incident which involved "mutual combat" between Miller and defendant. It stated that "in attempting to unravel the truth from the various witness statements that have been presented to the court I think that would consume an undue amount of time and might not result in any relevant information at all since it's very difficult to determine exactly what happened." The court did allow the defense to impeach Miller with evidence of her alleged battery on a police officer in August 2001 on grounds it involved criminal conduct amounting to a misdemeanor.

On his direct appeal Wallace claimed the evidence of Miller's past bad acts was relevant, and that the trial court erred by excluding them.  Specifically, Wallace argued "the trial court 'apparently overlooked' Evidence Code section 1103, subdivision (a)(1),[165] which allows defendant to introduce evidence of the victim's violent character to show the victim acted in conformity with that character in the case before the court."[166]  The Court of Appeal rejected this

---

[163]  *Id.*

[164]  *Id.*

[165]  Cal. Evidence Code § 1103, subdivision (a)(1) provides: In a criminal action, evidence of the character or a trait of character (in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct) of the victim of the crime for which the defendant is being prosecuted is not made inadmissible by Section 1101 if the evidence is: (1) Offered by the defendant to prove conduct of the victim in conformity with the character or trait of character.

[166]  *Id.*

ground on direct appeal.[167]  Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[168]

In denying this claim, the Court of Appeal stated the record did not support Wallace's argument that the trial court "apparently overlooked" Evidence Code section 1103.  The Court of Appeal noted that while the trial court did not specifically cite section 1103, evidence that is otherwise admissible under section 1103 must also be relevant.  The court ruled that evidence of Miller's prior bad acts were not relevant because Wallace was not asserting a self-defense theory and there was no evidence that Miller was the initial aggressor.

In his petition to this Court Wallace asserts that the trial court and Court of Appeal denied him his constitutional right to put on a defense.  Neither the record nor relevant case law support this argument.  The trial court ruled that Miller's prior acts were inadmissible only after Wallace's counsel informed the court that she would not be asserting a self-defense theory.  Furthermore, the court stated that it would reconsider the evidence if it was relevant to some issue that arose during the trial.

Wallace's argument is also not supported by any relevant Supreme Court authority.  The Supreme Court has held that a defendant in a criminal trial does not have an unfettered right to offer testimony which would otherwise be inadmissable under the standard rules of evidence.[169]  Rather, "[t]he State's interest in the orderly conduct of a criminal trial is sufficient to justify the imposition and enforcement of firm, though not always inflexible, rules relating to the

---

[167]  Lodged Doc. No 11.

[168]  *Ylst*, 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[169]  *Taylor v. Illinois,* 484 U.S. 400, 410 (1988).

identification and presentation of evidence."[170]  Wallace has failed to overcome the presumption

that the state courts correctly applied state laws.[171]

To the extent Wallace complains the trial court applied two different evidentiary

standards for the admission of similar evidence offered by the prosecution and the defense, his

argument is without merit.  The Supreme Court has never held that a criminal defendant has a

reciprocal right to introduce evidence of a victim's prior criminal acts.  Wallace is not entitled to

relief on his ninth ground.[172]

> D.     THE TRIAL COURT PROVIDED THE JURY WITH AN
>        INSTRUCTION THAT ALLOWED THE JURY TO FIND WALLACE
>        GUILTY ON LESS THAN ALL OF THE ELEMENTS AS REQUIRED
>        BY DUE PROCESS.

In this tenth ground, Wallace contends the trial court refused to instruct the jury that no

kidnaping occurs when a defendant has a reasonable and good faith belief that the alleged victim

voluntarily consented to accompany the defendant.[173]  This instruction is often referred to as a

---

[170] *Id*. at 411.

[171] *Bell,* 543 U.S. at 455; *see Estelle*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton,* 497 U.S. at 653 (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

[172] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75.

[173] Wallace's counsel requested the court issue CALJIC No. 9.58, which provides: "It is a defense to the crime of kidnapping that a defendant lacked general criminal intent. There is no general criminal intent if a defendant entertained a reasonable and good faith belief that the person alleged to have been kidnapped voluntarily consented to accompany the defendant and to the movement involved in the purported kidnapping. If from all the evidence you have a reasonable doubt that the defendant had general criminal intent at or during the time of the movement, you must find [him] not guilty of kidnapping."

"Mayberry" instruction, a shorthand reference to *People v. Mayberry*, 542 P.2d 1337 (Cal. 1975).

When dealing with a deficient instruction in a habeas proceeding, the only question for this Court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."[174]  A habeas petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional right]."[175]  "It is well established that the instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record."[176]  When a habeas petitioner alleges constitutional error based on the trial court's failure to give an instruction, his burden is "especially heavy" because "[a]n omission, or incomplete instruction, is less likely to be prejudicial than a misstatement of the law."[177]  Furthermore, when the trial court denies a proposed defense instruction, it is not error where the instructions given adequately encompassed the theory of defense.[178]  The Court of Appeal

---

[174]  *Estelle,* 502 U.S. at 72 (internal citations omitted).

[175]  *Donnelly*, 416 U.S. at 643.

[176]  *Estelle*, 502 U.S. at 72 (internal citations and quotations omitted).

[177]  *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

[178]  *United States v. Del Muro*, 87 F.3d 1078, 1081 (9th Cir. 1996); *United States v. Duran*, 59 F.3d 938, 941 (9th Cir. 1995); *United States v. Tsinnijinnie*, 601 F.2d 1035, 1040 (9th Cir. 1979).

rejected this ground on direct appeal.[179]  Because this decision is the last reasoned decision of the state court, it is the applicable decision for purposes of AEDPA.[180]

In denying this claim, the Court of Appeal held "[t]he [trial] court has a duty to instruct on a defense 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'"[181]  The Court of Appeal noted a "Mayberry instruction focuses on a defendant's state of mind, not whether the evidence demonstrated consent on the victim's part"[182]  Thus, because Wallace did not testify as to his state of mind, such an instruction was unnecessary.

The trial court did, however, instruct the jury using CALJIC No. 9.56, which states there is no kidnapping where the alleged victim consents.[183]  Wallace has failed to overcome the presumption that the state courts correctly applied state laws.[184]  Wallace has failed to show how,

---

[179]  Lodged Doc. No 11.

[180]  *Ylst*, 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[181]  *Wallace*, 2006 WL 951307 at *6.

[182]  *Id* at *7.

[183]  *Id*. at *6.  CALJIC No. 9.56 provides: "When one consents to accompany another, there is no kidnapping so long as the condition of consent exists.  To consent, a person must, one, act freely and voluntarily and not under the influence of threats or force or duress[;] two, have knowledge that she was being physically moved[;] and, three, possess sufficient mental capacity to make an intelligent choice whether to be physically moved by the other person or persons.  Being passive does not amount to consent.  Consent requires a free will and positive cooperation in act or attitude.

[184]  *Bell*, 543 U.S. at 455; *see Estelle*, 502 U.S. at 67-68 (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton*, 497 U.S. at 653 (it is presumed that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

after offering no evidence as to his own state of mind, and citing no relevant Supreme Court authority, the trial court's decision to issue CALJIC 9.56 as opposed to CALJIC 9.58 "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[185] Wallace is not entitled to relief on his tenth ground.

       E.      TRIAL COURT ERRONEOUSLY ALLOWED A DEPUTY SHERIFF TO TESTIFY THAT VICTIMS OFTEN GIVE MORE ACCURATE STATEMENTS SEVERAL DAYS AFTER THE INCIDENT AND THAT MILLER DID NOT SEEM TO BE MAKING UP HER STORY.

In his eleventh ground, Wallace contends that he was prejudiced by a trial court ruling that allowed the deputy sheriff who took a statement from Miller to testify that he did not think she was lying.  The California Court of Appeal conceded that portions of Deputy Ward's testimony were inadmissible, but that the admission of the testimony was harmless.  Specifically, the Court of Appeal held that Wallace was unable to show prejudice.[186]  Thus, the only issue for this Court is whether the decision of the Court of Appeal "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court rendered its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[187]

---

[185] 28 U.S.C. § 2254(d); *see Williams*,529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

[186] *Wallace*, 2006 WL 951307 at *9.

[187] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

In holding that Deputy Ward's testimony was harmless, the Court of Appeal observed: 1) "Deputy Ward did not profess any expertise in assessing the credibility of domestic violence victims;"[188] 2) "the prosecutor asked no follow up questions and did not refer to Ward's challenged comment during closing argument;"[189] 3) and "the trial court instructed with CALJIC No. 2.81 relating to lay opinion testimony,[190] that the jury is not required to accept the opinion of a lay witness."[191]  After reviewing the record ,this Court cannot conclude that the Court of Appeal's assessment that the error was insignificant and passing "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[192] Rather, the facts asserted are supported by the record.  Wallace is not entitled to relief on his eleventh ground.

---

[188]  Wallace, 2006 WL 951307 at *9.

[189]  *Id.*  While the prosecutor did reference Ward's testimony in closing, she confined her reference to Ward's assessment of Miller's demeanor, not her credibility.

[190]  CALJIC No. 2.81 provides: "In determining the weight to be given to an opinion expressed by any witness [who did not testify as an expert witness], you should consider [his] [her] believability, the extent of [his] [her] opportunity to perceive the matters upon which [his] [her] opinion is based and the reasons, if any, given for it. You are not required to accept an opinion but should give it the weight, if any, to which you find it entitled."

[191]  *Wallace*, 2006 WL 951307 at 9.

[192]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer*, 538 U.S. at 70-75 (explaining this standard).

F.    THERE WAS INSUFFICIENT EVIDENCE TO SHOW THAT
       WALLACE'S CONDUCT RESULTED IN A "TRAUMATIC
       CONDITION"

In his thirteenth ground Wallace claims there was insufficient evidence to support a
finding that his conduct toward Miller resulted in a "traumatic condition."[193]  The Court of
Appeal rejected this ground on direct appeal.[194]  Because this decision is the last reasoned
decision of the state court, it is the applicable decision for purposes of AEDPA.[195]

As stated by the Supreme Court in *Jackson*,[196] the constitutional standard for sufficiency
of the evidence is whether, "after viewing the evidence in the light most favorable to the
prosecution, *any* rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt."[197]  This Court must, therefore, determine whether the decision by
the Court of Appeal unreasonably applied *Jackson*.

Wallace misperceives the role of a federal court in a habeas proceeding challenging a
state-court conviction.  This Court is precluded from either re-weighing the evidence or
assessing the credibility of witnesses.  Where, as in this case, the question is one of credibility,

---

[193]  To prove domestic abuse under Cal Penal Code § 273.5(a), the prosecution must
show defendant "inflict[ed] upon a person who is his . . . former cohabitant . . . corporal injury
resulting in a traumatic condition . . . . A traumatic condition is defined by Cal Penal Code §
273.5(c) as "a condition of the body, such as a wound or external or internal injury, whether of a
minor or serious nature, caused by a physical force."  Trauma includes, but is not limited to,
injuries such as "sprains, bruises, fractures, dislocation [and] concussion."  *People v. Gutierrez*,
171 Cal.App.3d 944, 952 (1985).

[194]  Lodged Doc. No 11.

[195]  *Ylst,* 501 U.S. at 804; *Jones*, 229 F.3d at 118.

[196]  *Jackson v. Washington*, 443 U.S. 307 (1979).

[197]  *Id.* at 319 (emphasis in the original).

the finding of the jury carries the day.[198]   Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[199]   That such evidence exists is clearly established by the record in this case. Wallace bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Wallace has failed to carry.

Wallace does not dispute that Miller sustained injuries; rather Wallace contends there was insufficient evidence from which a reasonable jury could conclude Wallace himself had actually inflicted injuries, rather than Miller's jump from the moving car.   Wallace's argument is unpersuasive.

Miller testified that the back of her head was tender for about a day as a result of Wallace's hitting her there during the "tussle" at his mother's house.[200]   When Deputy Miller interviewed Miller, she told him that Wallace had hit her in the head and in the chest area, both in appellant's mother's house and in his car.[201]   Miller also told Ward that "the back of her head was hurting a great deal and her chest and her foot was really hurt."[202]   Finally, Paramedic Brenden Brown testified he discovered a small contusion at the back of Miller's head.[203]   The Court of Appeal held that this was sufficient to support an implied finding by the jury that

---

[198]   *See Bruce v Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

[199]   *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[200]   Reporter's Transcript on Appeal, pg. 447.

[201]   Reporter's Transcript on Appeal, pp. 607-08.

[202]   Reporter's Transcript on Appeal, pg. 600.

[203]   Reporter's Transcript on Appeal, pg. 670.

Wallace had caused Miller a "traumatic injury" under section 273.5.[204]  Because this finding was grounded in the record, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Wallace has failed to show that the Court of Appeal decision constituted an unreasonable application of *Jackson*.[205]  Wallace is not entitled to relief on his thirteenth ground.

---

[204]  *Wallace*, 2006 WL 951307 at *8.

[205]  28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Lockyer,* 538 U.S. at 70-75 (explaining this standard).

V.      CONCLUSION and ORDER

Wallace is not entitled to relief under any ground raised in the Petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition Under 28 U.S.C. § 2254 for Writ of

Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of

Appealability.[206]  Any further request for a Certificate of Appealability must be addressed to the

Court of Appeals.[207]

The Clerk of the Court to enter judgment accordingly.

Dated:  July 20, 2010.


                                        /s/ James K. Singleton, Jr.

                                   **JAMES K. SINGLETON, JR.**
                                   United States District Judge

---

[206] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) ("reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks omitted).

[207] *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.